**Andrea A. SCHATZ, Relator,**

v.

**INTERFAITH CARE CENTER and New Hampshire Insurance Company/Chartis, Respondents.**

**No. A11–1171.**

Supreme Court of Minnesota.

April 11, 2012.

---

644

James B. Peterson, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, for relator.

Nicole B. Surges, Erstad & Riemer, P.A., Minneapolis, MN, for respondents.

## OPINION

DIETZEN, Justice.

Relator, Andrea A. Schatz, who was employed by Interfaith Care Center, was injured in a work-related accident in Minnesota, and then moved to Wyoming where she received medical treatment. The Wy-

oming medical providers submitted their charges to New Hampshire Insurance Company, the employer's workers' compensation insurer. Relying on Minn.Stat. § 176.136, subd. 1b(d) (2010), the insurer made payments in the amount provided under the workers' compensation benefit structure in Wyoming. Schatz filed a workers' compensation medical request for the unpaid balance, arguing that Minn. Stat. § 176.135, subd. 1 (2010), was controlling. The workers' compensation judge agreed and found for Schatz, and the Workers' Compensation Court of Appeals (WCCA) reversed. Because we conclude that Minn.Stat. § 176.136, subd. 1b(d), limits a Minnesota employer's workers' compensation liability to an out-of-state medical provider to the amounts provided in the workers' compensation schedule of benefits in the state where the provider is located, and that section 176.136, subdivision 1b(d), is not unconstitutional as applied, we affirm.

Schatz injured her left shoulder in a work-related accident on January 26, 2009. At the time of the accident, Schatz resided in Minnesota. Interfaith Care Center and the workers' compensation insurer, New Hampshire Insurance Company, accepted liability for the injury.

Subsequently, Schatz moved to Wyoming where she received medical treatment for her shoulder injury. Her medical treatment included surgery to her left shoulder in October 2009, and a second surgery in January 2010. The surgeries were performed by a physician from Thunder Basin Orthopaedics in Gillette, Wyoming; anesthesia for both surgeries was provided by Wyoming Regional Anesthesia.

Both Wyoming medical providers submitted their bills to the workers' compensation insurer for payment. The workers' compensation insurer relied on section 176.136, subdivision 1b(d), to limit the amounts of its payments to those set forth in the workers' compensation schedule of benefits in Wyoming. Subsequently, Thunder Basin Orthopaedics billed Schatz for the balance of $5,796.92, and Wyoming Regional Anesthesia billed Schatz for the balance of $1,401.44.

After Schatz requested and Interfaith and the workers' compensation insurer refused to pay the remaining balance of either Wyoming medical provider, Schatz filed a workers' compensation medical request for payment.[1] The parties stipulated to the relevant facts, but disputed whether section 176.135, subdivision 1, or section 176.136, subdivision 1b(d), governed the outcome of the case. Schatz argued that section 176.135, subdivision 1, was dispositive, and required respondents to pay for all medical expenses reasonably required; respondents argued that section 176.136, subdivision 1b(d), applied when a Minnesota employee injured in a work-related accident received medical treatment in a different state, limiting respondent's responsibility to the amount provided in the workers' compensation fee schedule for that state.

The workers' compensation judge concluded that section 176.135, subdivision 1, was controlling, and that the employer and insurer were liable for the balances due to the Wyoming medical providers. In a 2–1 decision, the WCCA reversed, concluding that Minn.Stat. § 176.136, subd. 1b(d), was controlling. *Schatz v. Interfaith Care Ctr.*, 2011 WL 3373690 (Minn. WCCA June 16, 2011). The WCCA reasoned that section

1. Neither Wyoming medical provider intervened in this action; both have notified Schatz that they believe it is her responsibility to pay the remaining balances of the bills. We need not, and do not, decide whether Schatz is liable for the remaining balances.

176.136, subdivision 1b(d) plainly limits an employer's liability for the costs of medical treatment provided by a health care provider located outside of Minnesota and concluded that the statute was intended to contain the cost of medical treatment for employers who are subject to the Minnesota Workers' Compensation Act (the Act). *Id.* at *4. The WCCA concluded that the workers' compensation judge's decision awarding full payment of the providers' charges was erroneous and must be reversed. *Id.* The dissent concluded that section 176.135, subdivision 1, was controlling, and that the workers' compensation judge's decision should be affirmed. *Id.* at *5–6 (Stofferahn, J., dissenting).

On appeal, Schatz argues that the WCCA erred in concluding that section 176.136, subdivision 1b(d), not section 176.135, subdivision 1, was controlling in this case. Alternatively, Schatz argues that section 176.136, subdivision 1b(d), is unconstitutional as applied to her. We address each argument in turn.

### I.

Schatz contends that the WCCA erred in applying section 176.136, subdivision 1b(d), rather than section 176.135, subdivision 1, to this case for three reasons. Specifically, Schatz argues that there is a conflict between section 176.136, subdivision 1b(d), and section 176.135, subdivision 1; that construing section 176.136, subdivision 1b(d), as controlling will lead to absurd results; and that section 176.136, subdivision 1b(d), improperly extends the subject matter jurisdiction of workers' compensation courts.

### A.

First, Schatz argues that there is a conflict between Minn.Stat. § 176.135, subd. 1, and Minn.Stat. § 176.136, subd. 1b(d). If there is a conflict between the provisions, Schatz's position is that Minn.Stat. § 176.135, subd. 1, must control in order to comply with the general principle that employees are not liable for reasonable medical expenses under the Act.

The interpretation and construction of a statute is a question of law that we review de novo. *See Varda v. Nw. Airlines Corp.,* 692 N.W.2d 440, 444 (Minn. 2005). Our goal in statutory construction is "'to ascertain and effectuate the intention of the legislature.'" *U.S. Bank N.A. v. Cold Spring Granite Co.,* 802 N.W.2d 363, 375 (Minn.2011) (quoting Minn.Stat. § 645.16 (2010)). When a statute is clear and unambiguous, our task is limited to construing the words of the statute according to their plain and ordinary meaning. *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.,* 776 N.W.2d 693, 698 (Minn.2009). And we construe a statute, if possible, in a way that "give[s] effect to all its provisions." Minn.Stat. § 645.16.

The canons of construction describe how we should resolve a potential conflict in statutes. *See* Minn.Stat. § 645.26 (2010). Generally, we must examine the statutes to determine whether a conflict exists, and whether the conflict is irreconcilable. *See State v. Kalvig,* 296 Minn. 395, 397–98, 209 N.W.2d 678, 680 (1973). A conflict is "[a] state of disharmony between incompatible or antithetical persons, ideas, or interests." *The American Heritage Dictionary of the English Language* 386 (4th ed.2009). If the conflicts are irreconcilable, the specific provision of the law "shall prevail and shall be construed as an exception to the general provision." Minn.Stat. § 645.26, subd. 1.

We turn first to an examination of the statutes to determine whether an irreconcilable conflict exists. Section 176.135, subdivision 1, provides:

The employer shall furnish any medical, psychological, chiropractic, podiatric, surgical and hospital treatment, including nursing, medicines, medical, chiropractic, podiatric, and surgical supplies ... as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury.

Pursuant to this statute, the employer shall "furnish" medical, surgical and hospital treatment to an injured employee as may be reasonably required to cure and relieve that person from the effects of the injury. Section 176.136, subdivision 1b(d), provides:

An employer's liability for treatment, articles, and supplies provided under this chapter by a health care provider located outside of Minnesota is limited to the payment that the health care provider would receive if the treatment, article, or supply were paid under the workers' compensation law of the jurisdiction in which the treatment was provided.

We conclude that no conflict exists between section 176.135, subdivision 1, and section 176.136, subdivision 1b(d), with respect to an employer's liability for the amounts charged for treatment furnished by a medical provider located outside of Minnesota. Specifically, section 176.135, subdivision 1, does not address the topic. Instead, section 176.135, subdivision 1, merely provides, in relevant part, that the employer shall "furnish" medical, surgical and hospital treatment to an injured employee as may be reasonably required to cure and relieve that injured employee from the effects of the injury. The statute does not address, one way or another, the amount of an employer's liability for medical treatment when the treatment is furnished by a medical provider located outside of Minnesota.

Schatz urges us to interpret section 176.135, subdivision 1, to require the employer to pay all of the "usual and customary charges" of out-of-state medical providers. Schatz's argument relies on our decision in *Roraff v. Department of Transportation*, 288 N.W.2d 15 (Minn. 1980). In *Roraff*, we considered whether the workers' compensation court may award attorney fees in a proceeding to recover medical expenses under section 176.135, subdivision 1. 288 N.W.2d at 15. In affirming the workers' compensation court's award of attorney fees, we observed that section 176.135, subdivision 1, obligated the employer to not only "furnish medical treatment," but also imposed "an additional obligation to pay the additional reasonable expenses necessarily incurred by an employee." 288 N.W.2d at 16. Thus, in *Roraff*, we concluded that the obligation to furnish medical treatment in section 176.135, subdivision 1, includes the obligation to pay the reasonable expenses of that treatment. But *Roraff* did not interpret or apply section 176.136, subdivision 1b(d), or examine the liability of an employer when the medical treatment is furnished by a medical provider located outside Minnesota. *Roraff*, therefore, does not answer the question before us, namely, the liability for charges incurred for medical treatment furnished by an out-of-state provider.

Section 176.136, does, however, answer the question. It describes the employer's liability to pay an injured employee's expenses for medical treatment in various situations. *See* Minn.Stat. § 176.136, subd. 1, 1a, 1b (2010). The statute provides that the commissioner shall promulgate a workers' compensation fee schedule for medical treatment. *Id.,* subd. 1. In some instances, a reasonable fee is less than the usual and customary charge of the medical provider. For example, section 176.136, subdivision 1b(b), sets the

reasonable charge for treatments not otherwise covered under the other subdivisions of section 176.136, at 85% of a medical provider's usual and customary charge. Section 176.136, subdivision 1b(d), addresses the fee schedule for a medical provider located outside of Minnesota. Specifically, it provides that the reasonable payment that an out-of-state medical provider may receive is the amount provided in the workers' compensation fee schedule of the state where the medical treatment is provided. Thus, the amounts paid an out-of-state provider could be the same, higher, or lower than the workers' compensation fee schedule for Minnesota. Consequently, Minnesota's workers' compensation benefit schedule contemplates that, under some circumstances, the employer is not liable for the medical provider's entire bill, even if that bill is the medical provider's usual and customary charge.

We conclude that no conflict exists between section 176.135, subdivision 1, and section 176.136, subdivision 1b(d), with respect to an employer's liability for the amounts charged for treatment furnished by a medical provider located outside of Minnesota.[2] Section 176.135, subdivision 1, requires employers to furnish medical treatment that is reasonably required; section 176.136, subdivision 1b(d), provides that when medical treatment is provided by an out-of-state provider, the liability of the employer is to pay in accordance with the workers' compensation fee schedule of the state in which the treatment was provided. Therefore, section 176.136, subdivision 1b(d), operates to limit the liability of the employer to pay an out-of-state medical provider in accordance with the workers' compensation fee schedule of that state, and is in harmony with Minn.Stat. § 176.135, subd. 1.

### B.

Second, Schatz argues that application of the plain language of Minn.Stat. § 176.136, subd. 1b(d), leads to the absurd result of requiring a covered employee to pay for her own reasonable medical expenses. Essentially, Schatz argues that the statute is unfair because it does not fully reimburse her for her medical expenses incurred for medical treatment she received in Wyoming.

When construing a statute, we presume that the Legislature did not intend a result that is absurd or unreasonable. Minn.Stat. § 645.17(1) (2010). This rule of construction applies when the words of the statute are ambiguous. *See State v. Peck,* 773 N.W.2d 768, 772 (Minn.2009). It is not available to override the plain language of a clear and unambiguous statute, except in an exceedingly rare case in which the plain meaning of the statute "utterly confounds" the clear legislative purpose of the statute. *Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 639 (Minn.2006) (citation omitted) (internal quotation marks omitted) (applying the plain language of a statute of repose even though it would necessarily foreclose some claims); *Hyatt v. Anoka Police Dep't,* 691 N.W.2d 824, 827–28 (Minn.2005) (refusing to conclude that the dog bite statute was inapplicable to police dogs even though the police may use reasonable force). A review of our case law reveals that we have only expressly applied the "rare case" exception once, in *Wegener v. Commissioner of Revenue,* in which we held that it was "utterly absurd"

---

**2.** The parties argue, at length, about whether the plain language of Minn.Stat. § 176.136, subd. 1b(d), makes a covered employee responsible for paying an out-of-state medical provider's charges that exceed a Minnesota employer's liability. We explicitly decline to decide this issue because it is not properly before us; the Wyoming medical providers did not intervene and are not, in this action, attempting to collect payment from Schatz.

to apply a property tax refund statute in a manner that would require a county assessor to ignore the value of a $464,635 structure when assessing the value of a parcel for real estate tax purposes. 505 N.W.2d 612, 617 (Minn.1993). This is not that rare case.

■■■ We conclude that section 176.136, subdivision 1b(d), is clear and unambiguous, and does not lead to an absurd result. The two basic purposes of the Act are to provide benefits to injured workers, and to do so at a reasonable cost to employers. *See* Minn.Stat. § 176.001 (2010). Cost containment for employers subject to the Act is a legitimate objective of the Legislature. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry,* 735 N.W.2d 713, 725–26 (Minn. 2007) (discussing that cost containment under the Act is a legitimate legislative objective); *Schmidt v. Modern Metals Foundry, Inc.,* 424 N.W.2d 538, 541–42 (Minn.1988).[3] The Legislature has significant authority to amend the Act as it sees fit. *See Parson v. Holman Erection Co.,*

428 N.W.2d 72, 76 (Minn.1988). Section 176.136, subdivision 1b(d), clearly and unambiguously limits the liability of an employer for medical expenses incurred by a covered employee in another state. This statute was clearly aimed at cost containment. The plain language of section 176.136, subdivision 1b(d), comports with the purpose of the Act, and therefore does not lead to an absurd result.

### C.

■■■ Third, Schatz argues that section 176.136, subdivision 1b(d), improperly extends the jurisdiction of the Act to out-of-state medical providers and improperly requires the WCCA to interpret and apply the workers' compensation fee schedules of other states. *See* Minn.Stat. § 175A.01, subd. 5 (2010) (providing that the WCCA "shall have no jurisdiction in any case that does not arise under the workers' compensation laws of [Minnesota]"). Interfaith counters that, because Schatz stipulated

---

3. In dicta in *Gluba,* we suggested that the objective of cost containment would be illegitimate if it led to "the denial of benefits to a *sufficiently large proportion of workers* who incur severe economic hardship as a consequence of work-related injuries [because] the workers' compensation scheme would no longer represent a reasonable trade-off of workers' common-law tort rights for statutory remedies under the Act." 735 N.W.2d at 725–26 (emphasis added) (internal quotation marks omitted). In passing Minn.Stat. § 176.136, subd. 1b(d), Schatz argues that the Legislature overlooked the potential consequence of shifting a small portion of the liability for reasonable medical expenses to an employee who receives medical treatment out-of-state. We disagree for two reasons. First, such a consequence, if it exists, does not seem to deny benefits to a "sufficiently large" number of workers so as to offend the overarching goals of the Act. *See* Minn.Stat. § 176.001; *Gluba,* 735 N.W.2d at 725–26. This is because Minn.Stat. § 176.136, subd. 1b(d), only could shift costs to a worker who (1) chose to receive treatment out-of-state in

(2) a state with a less generous workers' compensation fee schedule than Minnesota. This group of individuals would seem to be very small (and Schatz does not claim that any other worker has been negatively affected by the statute). Second, while we decline to address the question of whether an employee could be responsible, under Minn.Stat. § 176.136, subd. 1b(d), for paying an out-of-state medical provider's charges that exceed a Minnesota employer's liability, we note that the Act provides that medical providers cannot attempt to collect excessive fees from employees and that any fee that "exceeds the maximum permissible charge pursuant to [Minn.Stat. § 176.136] subdivision 1, 1a, *1b,* or 1c" is excessive. Minn.Stat. § 176.136, subd. 2(1) (2010) (emphasis added). Because Minn.Stat. § 176.136, subd. 1b(d), sets the maximum permissible charge for out-of-state medical treatment at the fee schedule of the state where the medical treatment was provided, it would seem that any charge that exceeded that state's fee schedule would be excessive under Minn.Stat. § 176.136, subd. 2(1).

that her medical providers received the correct payment under the Wyoming workers' compensation fee schedule, the workers' compensation courts had no need to, and did not, interpret or apply the workers' compensation fee schedule of Wyoming and, therefore, the jurisdictional issue is not presented here.

 Jurisdiction is a question of law, which we review de novo. *Hale v. Viking Trucking Co.*, 654 N.W.2d 119, 123 (Minn. 2002). Minnesota Statutes § 175A.01, subd. 5, provides that the WCCA "shall have no jurisdiction in any case that does not arise under the workers' compensation laws of [Minnesota]." The role of our court, however, is limited to deciding actual cases and controversies. *See Sinn v. City of St. Cloud*, 295 Minn. 532, 533, 203 N.W.2d 365, 365 (1972). If there is no actual controversy between the parties over an issue, we will not decide the issue. *See In re McCaskill*, 603 N.W.2d 326, 327 (Minn.1999).

The record indicates that the parties stipulated that the insurer paid the Wyoming medical providers the proper amount required under Wyoming's workers' compensation schedule of benefits. Based upon that stipulation, it was not necessary for either the workers' compensation judge or the WCCA to interpret or apply Wyoming law in order to determine the amount of fees due under Wyoming's workers' compensation fee schedule. Consequently,

the jurisdictional question of whether a workers' compensation court has the power to resolve a dispute over the propriety of payments under another state's fee schedule is not disputed in this case, and we need not decide it.

## II.

Schatz next argues that section 176.136, subdivision 1b(d), is unconstitutional as applied in this case. Specifically, Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), violates her constitutional rights to interstate travel, equal protection, and due process.[4] We will analyze each of these issues in turn.

## A.

First, Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), is unconstitutional because it penalizes her for exercising her fundamental right to interstate travel based solely on her decision to receive medical treatment in Wyoming.[5] She contends that it is unconstitutional to make her personally liable for medical expenses that would be paid by Interfaith had her medical treatment been procured in Minnesota.

 The constitutionality of a statute is a question of law, which we review de novo. *State v. Cox*, 798 N.W.2d 517, 519 (Minn.2011). We presume that Minnesota statutes are constitutional and will only strike down statutes as unconstitutional

4. Schatz's equal protection and right to travel arguments are related. Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), violates equal protection because it treats her differently than a similarly situated individual based on her exercise of the right to travel and, because the right to travel is a fundamental right, the statute is subject to strict scrutiny analysis. Schatz also necessarily argues that Minn.Stat. § 176.136, subd. 1b(d), burdens her right to travel.

5. Schatz appears to argue that she has been penalized for exercising her fundamental right to interstate travel under both the United States and Minnesota Constitutions. But we have never recognized that the right to interstate travel is protected by the Minnesota Constitution. And because we conclude that Minn.Stat. § 176.136, subd. 1b(d), does not burden Schatz's fundamental right to interstate travel under the United States Constitution, we do not decide whether she has such a right under the Minnesota Constitution.

when absolutely necessary. *Id.; see* Minn. Stat. § 645.17(3) (2010) ("In ascertaining the intention of the legislature the courts may be guided by the following presumptions ... the legislature does not intend to violate the Constitution of the United States or of this state...."). The party challenging the constitutionality of a statute, therefore, must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *Cox,* 798 N.W.2d at 519.

The right to interstate travel is a fundamental right recognized by the United States Constitution. *See Mitchell v. Steffen,* 504 N.W.2d 198, 200 (Minn. 1993); *Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), *overruled on other grounds by Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In analyzing right to interstate travel issues, we ask "whether the right to travel has been so burdened by [the challenged statute] that the statute's classification requires strict scrutiny rather than minimal rational basis analysis [because,] '[i]n reality, right to travel analysis refers to little more than a particular application of equal protection analysis.'" *Mitchell,* 504 N.W.2d at 200 (quoting *Zobel v. Williams,* 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982)). The right to interstate travel is burdened when a statute "*actually deters* such travel, when *impeding* travel is its primary objective, or when it uses any *classification* which serves to *penalize* the exercise of that right." *Mitchell,* 504 N.W.2d at 200 (citing *Attorney Gen. of N.Y. v. Soto–Lopez,* 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986)).

But a statute does not burden the right to interstate travel unless it affects a component of the right. *See Saenz v. Roe,* 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). The United States Supreme Court, in *Saenz,* concluded that

the right to travel has at least three different components:

[ (1) T]he right of a citizen of one State to enter and to leave another State, [ (2) ] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, [ (3) ] for those travelers who elect to become permanent residents, the right to be treated like other citizens of *that State.*

*Id.* (emphasis added).

The first component, the right to move from state to state, is affected only when a statute directly impairs the exercise of the right to free interstate movement by imposing some obstacle on travelers. *See id.* at 500–01, 119 S.Ct. 1518. For example, in *Edwards v. California,* 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), the Court invalidated California's "anti-Okie" law that made it a crime to bring an indigent person into California. Schatz does not contend that Minn.Stat. § 176.136, subd. 1b(d), imposes an actual obstacle on interstate travelers.

The second component of the right to travel, the right to be temporarily present in a second state, is protected by the Privileges and Immunities Clause of the United States Constitution. U.S. Const. art. IV, § 2, cl. 1. This right prevents a state from discriminating against temporary visitors "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). Section 176.136, subdivision 1b(d), has no application to temporary visitors to Minnesota, and therefore does not impact the second component of the right to interstate travel.

The third component of the right to interstate travel—the right to be

treated like other citizens of the second state—is protected by the Equal Protection Clause of the United States Constitution. U.S. Const. amend. XIV, § 1. The Equal Protection Clause guarantees " 'that a citizen of the United States can, of his own volition, become a citizen of any State of the Union by a *bona fide* residence therein, with the same rights as other citizens of that State.' " *Saenz,* 526 U.S. at 503, 119 S.Ct. 1518 (quoting *The Slaughter–House Cases,* 83 U.S. (16 Wall.) 36, 80, 21 L.Ed. 394 (1872)); *see also The Slaughter–House Cases,* 83 U.S. (16 Wall.) at 112–13 (Bradley, J., dissenting) ("A citizen of the United States has a perfect constitutional right to go to and reside in any State he chooses.... "). In other words, the third component of the interstate travel right protects the right of a citizen of one state to become a citizen of a second state. This right is affected when the new state places some burden on citizens of other states who *move to* the new state to become permanent residents. *See Saenz,* 526 U.S. 489, 119 S.Ct. 1518 (1999) (holding that California's reduction in benefits to new residents of the state, for their first year of residence, unconstitutionally penalized the new residents for exercising their right to travel); *see also Mitchell,* 504 N.W.2d at 199, 203 (holding that a Minnesota statute that reduced general assistance benefits to indigents who had not resided in Minnesota for at least 6 months was unconstitutional). Because Minn.Stat. § 176.136, subd. 1b(d), does not place any burden on a citizen of another state who moves to Minnesota, it follows that the statute does not affect the third component of the right to interstate travel.

Schatz, nonetheless, relies on the third component of the right to travel to support her argument. Specifically, Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), burdens her right to travel because she might be held personally liable for medical expenses in Wyoming for which she would not be personally liable if she had received the treatment in Minnesota. Schatz contends that she "received [a] severe diminution of her workers' compensation rights only because she moved from Minnesota to Wyoming." According to Schatz, this is unconstitutional under the right to travel because a *former* Minnesota resident covered by Minnesota's Workers' Compensation Act is constitutionally guaranteed the same workers' compensation benefits as a *current* Minnesota resident covered by Minnesota's Workers' Compensation Act.

A similar argument was considered by the United States Supreme Court in *Califano v. Torres,* 435 U.S. 1, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978). In that case, the plaintiff received Supplemental Security Income (SSI) benefits while residing in Connecticut. *Id.* at 2, 98 S.Ct. 906. When the plaintiff moved to Puerto Rico, his SSI benefits were terminated because residents of Puerto Rico were not eligible for them.[6] *Id.* at 2–3, 98 S.Ct. 906. The plaintiff claimed that the termination of his SSI benefits unconstitutionally burdened his right to interstate travel. *Id.* at 3, 98 S.Ct. 906. The Court rejected the plaintiff's argument, which it summarized as follows: "a person who travels to Puerto Rico must be given benefits superior to those enjoyed by other residents of Puerto

6. While Puerto Rico is not a state, the Court specifically noted that its unique relationship to the United States was irrelevant for the purposes of the right to interstate travel, stating that "[f]or purposes of this opinion we may assume that there is a virtually unqualified constitutional right to travel between Puerto Rico and any of the 50 States of the Union." *Torres,* 435 U.S. at 4 n. 6, 98 S.Ct. 906. Therefore, for purposes of its opinion in *Torres,* the Court treated Puerto Rico as if it was a state.

Rico *if the newcomer enjoyed those benefits in the State from which he came.*" *Id.* at 4, 98 S.Ct. 906 (emphasis added). The Court stated that plaintiff's argument "altogether transposed" the right to travel—which only requires that new residents of a state be given the same benefits as other residents of that state. *Id.*

Applying *Torres*, we conclude that Schatz's argument that she is entitled to more workers' compensation benefits than other Wyoming residents because she would have received those benefits in Minnesota lacks merit. Like the plaintiff in *Torres*, Schatz seeks to transpose the right to travel into a right to provide a newcomer with the same benefits enjoyed in a previous state of residence. But the right to travel does not, and has never been construed to, require a state to provide a new resident with the same benefits that the new resident received in her former state. Therefore, section 176.136, subdivision 1b(d), does not burden Schatz's fundamental right to interstate travel.

### B.

Second, we consider whether Minn.Stat. § 176.136, subd. 1b(d), violates equal protection under the Minnesota Constitution. *See* Minn. Const. art. I, § 2. Under an equal protection analysis, we determine whether a statute treats similarly situated individuals differently and, if so, whether the statute survives strict scrutiny, or rational basis review. *See Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 733 (Minn.2003); *Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 411 (Minn.2002) (stating that rational basis applies unless the statute implicates a fundamental right or a suspect classification). Importantly, we "routinely reject[ ] equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated different-

ly." *Cox*, 798 N.W.2d at 521. Therefore, as a threshold matter, we must decide whether Schatz is similarly situated to an individual who is treated differently under Minn.Stat. § 176.136, subd. 1b(d).

Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), treats her differently than a worker injured in Minnesota who seeks medical treatment in Minnesota, and that she is similarly situated to such a worker. Essentially, Schatz argues that workers covered by the Act are always similarly situated regardless of where they receive treatment. We disagree.

As a threshold matter, on its face, Minn. Stat. § 176.136, subd. 1b(d), does not distinguish between groups of workers. Instead, the classification in the statute is between costs payable to in-state medical providers and costs payable to out-of-state medical providers. Schatz, however, contends that Minn.Stat. § 176.136, subd. 1b(d), implicitly distinguishes between workers subject to the Minnesota Act who receive treatment in Minnesota and workers subject to the Minnesota Act who receive treatment outside of Minnesota.

But even assuming that Minn.Stat. § 176.136, subd. 1b(d), does classify individuals in this way, the classification is not between similarly situated groups. First, the statute does not distinguish between residents of Minnesota. When injured in Minnesota, all Minnesota workers are subject to Minn.Stat. § 176.136, subd. 1b(d), equally; and if the worker stays in Minnesota, section 176.136, subdivision 1b(d), never applies. It is only by virtue of leaving Minnesota that a worker may receive different benefits—and workers who leave Minnesota are not necessarily entitled to the same benefits as workers who do not. *See Torres*, 435 U.S. at 4–5, 98 S.Ct. 906 (stating that residents who leave a state are not entitled to the same benefits in the new state that they were enti-

tled to while they resided in the former state). Second, workers who receive medical treatment in Minnesota are treated by medical providers who are necessarily subject to the Act and Minnesota jurisdiction; workers who receive medical treatment outside of Minnesota receive it from medical providers who are not necessarily subject to the Act or Minnesota jurisdiction. This differentiates between the two groups because the Act has a mechanism for employers subject to the Act to challenge the reasonableness of the charges of medical providers subject to the Act; but those employers may be unable to challenge the reasonableness of the charges of medical providers not subject to the Act.

Because Minn.Stat. § 176.136, subd. 1b(d), does not treat similarly situated individuals differently, Schatz's equal protection claim fails, and we do not consider whether the statute would survive either rational basis review or strict scrutiny. *See Cox*, 798 N.W.2d at 521 (explaining that when a party cannot show that they are similarly situated to an individual being treated differently, the party's equal protection claim necessarily fails).

### C.

Finally, we consider whether Minn.Stat. § 176.136, subd. 1b(d), deprives Schatz of due process under the Minnesota Constitution. *See* Minn. Const. art. I, § 7 ("No person shall be ... deprived of life, liberty or property without due process of law."). Schatz argues that Minn.Stat. § 176.136, subd. 1b(d), deprives her of a constitutionally protected property interest to have her reasonable, necessary, and causally related medical expenses paid by the employer and insurer. *See* Minn.Stat. § 176.135, subd. 1. Because Schatz believes that she is personally liable to the Wyoming medical providers for the expenses that exceed Interfaith's liability under

Minn.Stat. § 176.136, subd. 1b(d), Schatz argues that the statute, as applied to her, deprives her of a vested property interest without due process. Interfaith argues that Schatz does not have a vested property interest protected by the Minnesota Constitution.

 We review as-applied challenges to the constitutionality of statutes de novo. *Irongate Enters., Inc. v. Cnty. of St. Louis*, 736 N.W.2d 326, 332 (Minn. 2007). Because statutes are presumed constitutional, the challenging party must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 421 (Minn.2005). Both the United States and Minnesota Constitutions state that an individual may not be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. We treat the United States and Minnesota due process protections identically. *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988).

Schatz's argument is based on procedural due process. To succeed on a procedural due process claim, Schatz must show that she had a constitutionally protected property interest in having any reasonable, necessary, and causally related medical expenses paid by Interfaith and that she was deprived of this property interest without due process. *See C.O. v. Doe*, 757 N.W.2d 343, 349 (Minn.2008).

 Therefore, we must first decide whether Schatz has a constitutionally protected property interest. For a property interest to exist, we have held that "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Hale v. Viking Trucking Co.*, 654 N.W.2d 119, 125 (Minn.

2002) (quoting *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Historically, we have limited the property rights that are entitled to due process to real property rights, final judgments, and certain vested statutory rights. *See In re Individual 35W Bridge Litigation,* 806 N.W.2d 820, 830–31 (Minn.2011). "Vested" property rights are those that have "become so fixed that it would be inequitable to abrogate [the right] by retrospective legislation." *Peterson v. City of Minneapolis,* 285 Minn. 282, 289, 173 N.W.2d 353, 357 (1969).

Schatz's property right, if any, must be a vested statutory right. But in *Lindell v. Oak Park Coop. Creamery,* we observed "that the expectation of workers' compensation benefits is not equivalent to a vested property right which cannot be taken away without prior notice and hearing." 369 N.W.2d 505, 507 (Minn.1985). In *Lindell,* we considered whether children of a deceased worker who had had their workers' compensation dependency benefits terminated upon the remarriage of their mother were denied due process. *Id.* at 506–07. We held that they had not been denied due process in part because they did not have a vested property interest in the workers' compensation benefits. *Id.* at 507. *Lindell* makes it clear that workers' compensation benefits are not vested property interests, and therefore Schatz does not have a constitutionally protected property interest.

### III.

In summary, we conclude that no conflict exists between Minn.Stat. § 176.135, subd. 1, and Minn.Stat. § 176.136, subd. 1b(d), with respect to an employer's liability for treatment furnished by a medical provider located outside of Minnesota. Specifically, Minn.Stat. § 176.136, subd. 1b(d), operates to limit the liability of an employer to pay an out-of-state medical provider in accordance with the workers' compensation fee schedule of that state.

Additionally, we conclude that Minn. Stat. § 176.136, subd. 1b(d), as applied, does not violate Schatz's constitutional rights to interstate travel, equal protection, or due process.

Accordingly, we affirm the decision of the Workers' Compensation Court of Appeals.

Affirmed.