HALBROOKS, JILL, Acting Justice.[6]

STATE of Minnesota by COMMIS-
SIONER OF HUMAN SER-
VICES, Intervenor,

County of Swift ex rel. Sarah J. Bouta
n/k/a Sarah J. Ashburn, Appellant,

v.

Bruce H. BUCHMANN, Respondent.

No. A12–1518.

Court of Appeals of Minnesota.

May 6, 2013.

6. Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subd. 2 (2012).

Robin W. Finke, Swift County Attorney, Benson, MN, for appellant.

Tara J. Ulmaniec, Ulmaniec Law Office P.L.L.C., Benson, MN, for respondent.

Lori Swanson, Attorney General, Cynthia B. Jahnke, Assistant Attorney General, St. Paul, MN, for intervenor Minnesota Commissioner of Human Services.

Considered and decided by LARKIN, Presiding Judge; HALBROOKS, Judge; and RODENBERG, Judge.

## OPINION

RODENBERG, Judge.

Appellant Swift County and intervenor Minnesota Commissioner of Human Services (commissioner) challenge the district court's order declaring unconstitutional as applied to respondent Bruce Buchmann Minnesota's statutes allowing driver's license suspensions for failure to pay child support. *See generally* Minn.Stat. §§ 171.186, subd. 1, .30, subd. 1(j). We reverse.

## FACTS

Respondent and Sarah Ashburn are the parents of R.D.B., born May 10, 1997, and D.M.B., born December 27, 1999. Respondent has two other children. Respondent rents a house in rural western Minnesota.[1] The nearest town, Danvers, has a population of 97 and is located nine miles from respondent's home. Respondent has worked in the past as a commercial truck driver. He is now unemployed.

In December 2001, respondent was ordered to pay $200 per month in child support for R.D.B and D.M.B. At that time, respondent was self-employed, preparing and selling firewood. Since that time, respondent has repeatedly failed to pay his child support obligation. This failure has resulted in significant arrearages and has prompted judicial and administrative actions, including repeated suspension of respondent's driver's and commercial driver's licenses. Over the years, respondent has entered into payment agreements with the county and had his licenses reinstated. Each time his driving privileges have been reinstated, he has again failed to make payments as agreed, resulting in those privileges again being suspended.

Respondent's long history of failure to pay his child support has prompted the district court to hold him in contempt. In April 2005, the district court found him in constructive civil contempt for nonpayment of support. Respondent's driver's license had been suspended for nonpayment of child support. The district court noted that respondent lost his job as a truck driver after he abandoned a truck for hire and its load in California when he was faced with an unloading delay caused by a longshoreman's strike. It also noted that, although respondent was unemployed, he had never moved for a reduction of his monthly child support obligation. The district court found respondent's unemployment to be "due to deliberate irresponsibility on his part."

In February 2006, respondent entered into a payment agreement with the Swift County child support office and his driving privileges were reinstated. In April 2008, respondent entered into a second payment agreement with Swift County, and his license, which had been suspended for nonpayment, was again reinstated. However, respondent made no payments pursuant to this agreement and his license was again suspended in June 2009. Respondent entered into a third payment agreement with Swift County in October 2009. He made the last child support payment he has ever made on November 2, 2009, which payment was made by income withholding. In 2010, respondent's driving privileges were again suspended and have remained so.

As a result of respondent's chronic unemployment, his home no longer has running water, telephone service, or electricity because of unpaid bills. He has an outdated eyeglasses prescription, and cannot afford the copay for replacement glasses. He formerly relied on friends for transportation, but he claims that this is no longer an option. Respondent owns no vehicle. His driver's and commercial driver's licenses have now expired.

In February and September 2011, the county sought again to have respondent held in contempt of court for nonpayment of child support. Respondent was then over $25,700 in arrears. Respondent moved to dismiss the contempt proceeding and to reinstate his licenses, arguing that the driver's-license-suspension statutes are unconstitutional.

---

1. Respondent's house is owned by a family trust, and he is billed for rent. The record reflects that he seldom, if ever, actually pays rent.

The district court held the contempt hearing before the constitutional issues were briefed and argued. At the hearing, a county child support officer testified that a number of jobs were available in the area that did not require a driver's license. Respondent testified that his lack of transportation made it impossible for him to find a job either because the job required a driver's license or because he would not be able to get to and from work. In an order filed March 8, 2012, the district court declined to hold respondent in contempt, noting that "[r]egardless of Respondent's level of responsibility in creating this dilemma, Minnesota Statutes are preventing Respondent from being able to turn his life around and resume making child support payments."

In an order filed July 3, 2012, the district court declared that the statute prohibiting the issuance of a limited commercial driver's license violated respondent's constitutional right of substantive due process. The district court identified the right to pursue employment as a protected interest and concluded that, while there is a rational basis for the statutes allowing for suspension of a driver's license for nonpayment of support, the prohibition against issuing a limited commercial driver's license to those nonpaying obligors whose driver's licenses had been suspended was "wholly irrational." The district court reasoned that prohibiting an obligor like respondent who is a commercial truck driver from obtaining a limited commercial driver's license prevents him from making a living and continuing to make child support payments, and that "[r]egardless of whether the obligor will make the payments, the obligor must have an opportunity to do so."

The district court also declared that the statute allowing for suspension of driver's licenses for nonpayment of child support violated respondent's constitutional right to equal protection. The district court reasoned that "the effect of the laws on people in rural Minnesota is considerably more harmful than for those in urban areas," and "the availability of employment is considerably lower" than in urban areas because there are fewer employers. The district court also emphasized that public transportation is rarely available in rural Minnesota, resulting in a "significantly greater" burden on rural Minnesotans whose driver's licenses are suspended. The district court concluded that it is "wholly irrational" to expect rural residents to walk or bike multiple miles or to move to find and maintain employment and that, without a driver's license, respondent cannot move his life forward or continue to make his child support payments. Swift County appealed. The commissioner intervened.

## ISSUES

I. Did the district court err in determining that Minn.Stat. § 171.30, subd. 1(j), violates respondent's substantive due process right to earn a living?

II. Did the district court err in determining that Minn.Stat. § 171.186, subd. 1, violates respondent's right to equal protection of the laws?

## ANALYSIS

 We review as-applied challenges to the constitutionality of statutes de novo. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 653 (Minn.2012). Minnesota statutes are presumed constitutional and reviewing courts declare statutes unconstitutional only when "absolutely necessary." *Id.* at 653–54; *see also* Minn.Stat. § 645.17(3) (2012) (allowing courts to presume that "the legislature does not intend to violate the Constitution of the United States or of this state"). A court's power to declare a

statute unconstitutional should be "exercised with extreme caution." *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 299 (Minn.2000). The party challenging a statute's constitutionality must therefore demonstrate the unconstitutionality beyond a reasonable doubt. *Schatz*, 811 N.W.2d at 654.

Whether Minnesota's driver's license suspension statutes are unconstitutional is a matter of first impression. Minnesota, however, is not the only state to have adopted this type of statutory scheme to incentivize obligors to pay their child support.[2] As such, this is not the first time the constitutionality of these statutes has been challenged on either a due process or equal protection basis. *See, e.g., Thompson v. Ellenbecker*, 935 F.Supp. 1037, 1040–41 (D.S.D.1995); *Amunrud v. Bd. of Appeals*, 158 Wash.2d 208, 143 P.3d 571, 574 (2006); *State v. Beans*, 965 P.2d 725, 727–29 (Alaska 1998).

Child support enforcement in Minnesota is governed by Minn.Stat. §§ 518A.26–.78 (2012) and related provisions at sections 171.186 (requiring the commissioner of public safety to implement driver's license suspension for certain nonpayment of child support) and 171.30 (prohibiting the commissioner of public safety from issuing a limited commercial driver's license to child support obligor whose driver's license was suspended under Minn.Stat. § 171.186).

If a child support obligor has a support arrearage exceeding three times the monthly support obligation and has not entered into a payment agreement, administrative remedies including driver's license suspension become available for use by the relevant public authority (the Minnesota Department of Human Services or a county acting on the department's behalf). Minn.Stat. §§ 518A.64–.74; 171.186, subd. 1. Once an obligor's license has been suspended for nonpayment, the obligor may apply for a limited driver's license "if the [obligor's] livelihood . . . depends upon the use of the driver's license." Minn.Stat. §§ 171.186, subd. 4, .30, subd. 1(b)(1). The commissioner of public safety is not permitted, however, to issue limited class A, B, or C (commercial) driver's licenses after suspension of an obligor's driver's license under section 171.186. Minn.Stat. § 171.30, subd. 1(j). An obligor's license remains suspended and may not be reinstated until the obligor comes into compliance with current child support orders or enters into a written payment agreement. Minn.Stat. § 171.186, subd. 3. Payment agreements consider each obligor's ability to pay and are tailored to the individual financial circumstances of each obligor. Minn.Stat. § 518A.69.[3]

## I.

The district court held that Minnesota's statutory provision prohibiting the issu-

---

2. Other states have similar schemes, in large part because, as the commissioner points out, the program is tied to federal child support program funding and mandates. *See* 42 U.S.C. §§ 651171.30 (prohibiting the commissioner of public safety from issuing a limited commercial driver's license) 669b (2006 & Supp.2011). Minnesota's child support enforcement provisions comply with the mandate at 42 U.S.C. § 666(a)(16) (2006), requiring that states have laws providing authority to suspend driver's or occupational licenses when an obligor is in arrears. Each state that

operates child support programs pursuant to the federal child support enforcement program receives federal financial participation to offset administration costs. *See* 45 C.F.R §§ 305.31, .61 (2012) (indicating how payments are calculated).

3. A similar statutory structure applies to the revocation of occupational licenses, such as a license to practice law or medicine, for failure to pay child support obligations. *See* Minn. Stat. §§ 518A.65(b), .66.

ance of a limited commercial driver's license to certain child support obligors whose driver's licenses have been suspended for nonpayment unreasonably interferes with respondent's right to seek employment and earn a living, thereby violating his constitutional right to substantive due process. *See* Minn.Stat. § 171.30, subd. 1(j).

■ The United States Constitution and the Minnesota Constitution afford identical due process protections. *Boutin v. LaFleur,* 591 N.W.2d 711, 716 (Minn.1999). Both provide that government cannot act to deprive a person of "life, liberty, or property without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. "[S]ubstantive due process protects individuals from 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *In re Linehan,* 594 N.W.2d 867, 872 (Minn.1999) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)).

■ The United States Supreme Court has never held that the right to pursue a particular profession, such as commercial truck driving, is a fundamental right; instead, the right to employment is a protected interest subject to rational basis review. *See Conn v. Gabbert,* 526 U.S. 286, 291–92, 119 S.Ct. 1292, 1295–96, 143 L.Ed.2d 399 (1999) (holding that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment," but that the right is one "subject to reasonable government regulation"); *Nebbia v. N.Y.,* 291 U.S. 502, 525, 527–28, 54 S.Ct. 505, 510–12, 78 L.Ed. 940 (1934) (holding that a right to work in a particular business or to "pursue a calling" is a protected right that may be conditioned and that may be subject to rational regulation). We therefore apply the rational basis test to determine whether application of the statutes here violates the substantive due process rights of respondent.

■ The rational basis test requires that (1) the statute must promote a public purpose, (2) the statute must not be an unreasonable, arbitrary or capricious interference with a private interest, and (3) the means chosen by the legislature bear a rational relation to the public purpose sought to be served. *Boutin,* 591 N.W.2d at 718. "[I]f the record indicates that the [statute] is rationally related to achievement of a legitimate governmental purpose, [its application] should be upheld." *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983).

### A. Public Purpose

■ Respondent does not challenge the statute's public purpose. We agree that the statute promotes a public purpose by attempting to ensure adequate and timely payment of child support. *See Schaefer v. Weber,* 567 N.W.2d 29, 33 (Minn.1997) (noting strong state policy of assuring that children have adequate and timely economic support from their parents); *Hopp v. Hopp,* 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968) (emphasizing that nonpayment of child support "present[s] a serious social problem"). The prospect of a driver's license suspension creates an incentive for those owing child support to make timely payments.

### B. Unreasonable Burden or Interference

Respondent argues that the statutory prohibition on issuing a limited commercial driver's license unreasonably interferes with and burdens his right to employment. Respondent asserts that, as a truck driver, his livelihood depends on his having a com-

mercial driver's license and that the prohibition against granting him a limited commercial license prevents him from working in "any viable field of employment" and destroys "any ability" he might have to pay child support or to support himself. We disagree.

The prohibition on limited commercial licenses is not an unreasonable interference with respondent's right to employment. As an initial matter, the prohibition on limited commercial licenses does not bar respondent from any or all employment. Respondent is unable to be employed *as a commercial truck driver* until he either satisfies his support obligation or complies with a payment agreement and has his driver's license reinstated. The record does not support respondent's assertion that his only employment possibilities require him to possess a commercial driver's license. For example, at the time his child support obligation was first established, respondent was self-employed selling firewood.

Respondent also has the option to enter into and make payments on a payment agreement. *Accord Beans,* 965 P.2d at 727 (holding that similar Alaska statute does not unduly burden obligor's ability to earn a living because as soon as obligor enters into a payment agreement, state must reinstate obligor's license). Such an agreement would be tailored to respondent's individual financial circumstances. *See* Minn.Stat. § 518A.69 (requiring consideration of obligor's individual financial circumstances in evaluating his ability to pay, and requiring any payment agreement to be reasonable). Compliance with the payment agreement would provide respondent an avenue to have his driver's and commercial licenses fully reinstated. *See* Minn.Stat. § 171.186, subd. 3 (providing that an obligor's driver's license suspension ends if the obligor is in compliance

with a written payment agreement). As discussed, not only has respondent had the opportunity to seek reinstatement of his driving privileges, but he also has entered into payment agreements several times and has had his driving privileges reinstated. Each such payment agreement was breached when respondent failed to make payments as agreed.

Moreover, since respondent's child support obligation was first established in 2001, he has never attempted to modify it even though the statutes allow for motions to modify. If respondent's financial situation is such that he cannot afford his child support obligation, he has the ability to seek a modification. *See* Minn.Stat. §§ 581A.34 (requiring that a child support obligation be based, in part, on the obligor's income), .39 (permitting modification of obligation orders when the terms of the order are unreasonable or unfair). Minnesota law provides that the support order "constitutes prima facie evidence that the obligor has the ability to pay the award." Minn.Stat. § 518A.71. But just as respondent has disregarded his support obligation, so has he disregarded his own right to have the support amount reviewed.

### C. Rational Relation to Public Purpose

Respondent argues that there is no rational connection between the prohibition on his receiving a limited commercial driver's license and the public purpose of using license suspension as an incentive for obligors to pay child support. Again, we disagree. Respondent desires to hold a commercial driver's license and work as a truck driver. Respondent has options to change his circumstances and get his driver's license and his commercial license reinstated. The statute provides a rational connection between the prohibition on limited commercial driver's licenses and the

public's interest in having respondent support his children's well-being through child support payments. *Accord Amunrud,* 143 P.3d at 578–79 (finding a rational connection between suspension of obligor's commercial driver's license and promotion of the state's interest in encouraging legally responsible people to financially support their children).

■ Respondent also argues that because suspension of a driver's license is an exercise of police power, and because the purpose of suspending a driver's license for failure to pay child support is to encourage an obligor to pay support, there is no rational connection between the two. This argument is not persuasive. *Accord Thompson,* 935 F.Supp. at 1040 (holding that similar statutory scheme is not irrational in part because being without a driver's license makes it more difficult for obligors to move with the specific intent of avoiding payment of child support). "[P]olice power is the ability of the state ... to impose restraints on private rights that are necessary for the general welfare." *C & R Stacy, LLC v. Cnty. of Chisago,* 742 N.W.2d 447, 453 (Minn.App.2007). Providing strong incentives via restrictions on the driving privileges of obligors who fail or refuse to take responsibility for their child support obligations is unquestionably related to the general welfare of the public: when child support obligors make their payments, custodial parents have the resources necessary to provide for the child's needs, and the state is not burdened with an unsupported child.

The legislature, in enacting section 171.30, subdivision 1(j), has essentially placed a condition on respondent's employment as a commercial truck driver: he has to pay his child support. The legislature could reasonably conclude that if an individual wishes to continue to receive the financial benefit of a commercial license granted by the state, that individual must not be permitted to burden the state or taxpayers with an obligation to support his children. *Accord Amunrud,* 143 P.3d at 578–79 (reaching the same conclusion). It is not impossible for respondent to change his circumstances. The prohibition on limited commercial driver's licenses does not unduly burden his right to employment or his ability to meet his support obligations.

## II.

■ The constitutions of the United States and the State of Minnesota guarantee a person's right to equal protection of the law. U.S. Const. amend. XIV; Minn. Const. art. 1, § 2. Minnesota's Equal Protection provision is analyzed under the same principles used to analyze the guarantee in the United States Constitution. *Healthstar Home Health, Inc. v. Jesson,* 827 N.W.2d 444, 448–49 (Minn.App.2012). Equal protection requires that similarly situated individuals be treated similarly. *Id.* at 449. As a threshold matter, we must decide whether respondent is similarly situated to an individual who is treated differently under section 171.186, subdivision 1. *Id.*

■ Respondent contends that Minnesota law treats child support obligors living in rural areas differently from obligors living in urban areas. Respondent argues that because rural obligors live in isolation with fewer employment opportunities and with a correspondingly greater need for a driver's license because they have to travel greater distances to access employment opportunities, the statute violates the rural obligor's constitutional right to equal protection of the laws. We disagree. Although the effect of a suspension of driving privileges differs from one person to another, the law treats similarly situated persons similarly.

The only distinction made by Minn.Stat. § 171.186, subd. 1, is between child support obligors who are both in arrears in an amount more than three times their monthly obligation and not in compliance with a payment agreement, and those who are in compliance with either the child support order or a payment agreement. The statute applies in equal fashion to obligors regardless of where they live. All obligors subject to the statute are able to receive a limited driver's license if they meet certain conditions, and no obligors subject to the statute are able to receive a limited commercial license while their driver's license is suspended. It is undoubtedly true that the impact of license suspension differs from person to person. An urban obligor who lives very near a bus line may experience less impact upon suspension of his or her driver's license than one who lives remotely from a bus line. A rural obligor who lives with or near family may have an easier time arranging a ride to work than one who lives remotely from family. Some rural Minnesotans probably have less difficulty arranging for transportation in the absence of a driver's license than some urbanites. Once subject to license suspension under the statute, a rural obligor has the same options for license reinstatement as an urban obligor. And the obligations of rural obligors are equally important as those of urban obligors. Because the statute does not treat these similarly situated obligors differently, respondent's equal protection claim fails. *See Schatz*, 811 N.W.2d at 657 (explaining that when a party cannot show that he or she is similarly situated to an individual being treated differently, the party's equal protection claim necessarily fails).

Because respondent has failed to establish that the statute treats rural obligors differently from their urban counterparts, we need not consider whether the statute would survive rational-basis review.[4] *See id.*

Even if we were to subject the statute to a rational-basis review, it would not change the result. The Minnesota rational-basis test has three requirements:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs;

(2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and

(3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991) (quotation omitted). So long as a classification is rationally based, the legislature has no constitutional obligation to ensure that each discrete individual circumstance is affected in exactly the same way under a statute. *See John Hancock Mut. Life Ins. Co. v. Comm'r of Revenue*, 497 N.W.2d 250, 253 (Minn.1993) ("When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." (quotation omitted)).

---

4. Respondent does not contend that residents of rural areas constitute a "suspect class" so as to trigger strict scrutiny. *See Healthstar Home Health*, 827 N.W.2d at 449 (stating that when a constitutional challenge does not involve either a suspect class or a fundamental right, the challenge is reviewed using a rational-basis standard).

■ Between obligors like respondent who are subject to driver's license suspension under the statute and those who are not, the legislature has reasonably chosen to identify and focus on a group of obligors who need *additional* incentives to comply with court-ordered child support obligations—those who are over three months in arrears *and* who have not entered into and complied with a payment agreement. This classification is relevant to the purpose of the law—to incentivize those child support obligors who have shown a persistent unwillingness to meet their support obligation. *Accord Thompson,* 935 F.Supp. at 1041 (upholding restrictions on drivers licenses imposed on obligors owing more than $1,000 in arrearages as rationally related to the achievement of the legitimate purpose of collecting child support); *accord Beans,* 965 P.2d at 729 (holding that similar statutory scheme does not violate equal protection because the payment agreements are tailored to the obligor's individual needs). The threat of license suspension posed to respondent and other obligors in arrears is a reasonable incentive to encourage compliance with child support obligations.[5]

The district court focused its decision on the disparate impact that, respondent claims, the statute has on rural obligors. However, rural Minnesotans are not a suspect class. Therefore, any arguably disparate impact the statute has on rural obligors is not a basis for invalidating the application of the statute to respondent. *See Odunlade v. City of Minneapolis,* 823 N.W.2d 638, 648 (Minn.2012) (providing that disparate impact claimants must be part of a suspect class). Unequal impact of a statute on individual persons not part of a suspect class is a matter for the legislature to address. *Guilliams v. Comm'r of Revenue,* 299 N.W.2d 138, 143 (Minn.1980) (providing that so long as a classification has a rational basis, "it does not offend the constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality" (quotation omitted)).

There are special benefits and challenges to Minnesotans who choose to live in rural areas of our great state. Dependence on a motor vehicle and a driver's license is often more important to those of us who live in greater Minnesota. Although the incentive of having and maintaining a driver's license varies for each individual, the driver's license suspension statute and the attendant ban on limited commercial driver's licenses provides an incentive for all child support obligors, including respondent, to pay their support obligations and to comply with payment agreements. This compliance is something in which the state has a legitimate interest. Respondent can have his driver's license and therefore commercial driver's license reinstated under the current statutory scheme, and this can be accomplished in a manner that is reflective of respondent's individual financial circumstances. The application of the statutory scheme to respondent's noncompliance with his obli-

---

**5.** The commissioner's brief includes, in its appendix, a report to the legislature concerning an ongoing evaluation of the effectiveness of Minnesota's child support enforcement measures and which suggests that, in addition to being a reasonable choice of a mechanism to encourage compliance with child support orders, the enforcement scheme seems effective. Minn. Dep't of Human Servs., Child Support Enforcement Div., *Evaluation of* *Minnesota Child Support Enforcement Mechanisms and Programs* (2011). This report was not submitted to the district court, but a reviewing court may consider cases, statutes, rules, and publicly available articles that were not presented to the district court. *Fairview Hosp. v. St. Paul Fire & Marine Ins. Co.,* 535 N.W.2d 337, 340 n. 3 (Minn.1995). Because respondent has not moved to strike the publicly available report, we consider it.

gation to support R.B.D. and D.M.B. does not violate respondent's constitutional rights.

## DECISION

The prohibition under Minn.Stat. § 171.30, subd. 1(j), against issuing limited commercial driver's licenses to child support obligors who have had their driver's license suspended pursuant to Minn.Stat. § 171.186, subd. 1, does not unduly burden respondent's substantive due process right to earn a living. The statute does not deny respondent all opportunity to find employment. The fact that the statute may make it more difficult for respondent to work in the specific job he prefers does not render the statute unconstitutional as applied to respondent.

Additionally, Minn.Stat. § 171.186, subd. 1, which allows suspension of a driver's license when a child support obligor is significantly in arrears and not in compliance with a payment agreement, does not violate respondent's right to equal protection. The statute applies to all obligors who are significantly in arrears and not in compliance with payment agreements, regardless of where they live. Respondent has the same opportunities as all other obligors subject to the statute to have his driver's license reinstated.

**Reversed.**