**Charles MITCHELL, et al., Respondents,**

v.

**Natalie Haas STEFFEN, in her official capacity as Commissioner, Minnesota Department of Human Services, Appellant.**

**No. C3–92–239.**

Court of Appeals of Minnesota.

June 9, 1992.

Review Granted Aug. 4, 1992.

Ann C. Cofell, Mid–Minnesota Legal Assistance, St. Cloud, Paul W. Onkka, Jr., Southern Minnesota Regional Legal Services, Inc., Prior Lake, William C. Daniels, Jr., Mid–Minnesota Legal Assistance, Minneapolis, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge *.

Respondents Charles Mitchell, et al. brought this class action under 42 U.S.C.

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

§ 1983 against appellant Natalie Haas Steffen, in her capacity as Commissioner of the Department of Human Services. Respondents' suit challenges the constitutionality of Minn.Stat. § 256D.065 (Supp.1991), on the grounds that it implicates the right to travel and violates the Equal Protection Clause of the United States Constitution. Respondents' complaint also alleges the statute violates the equal protection clause of the Minnesota Constitution, and the Privileges and Immunities Clause of the United States Constitution. Respondents seek injunctive and declaratory relief, and an award of retroactive benefits for class members.

In response to cross motions for summary judgment, the district court ruled the case should proceed as a class action pursuant to Minn.R.Civ.P. 23.01 and 23.02(b) (class action maintainable where final injunctive or declaratory relief appropriate), granted summary judgment to respondents on the claim that the statute is unconstitutional under the Equal Protection Clause of the United States Constitution, and enjoined appellant from enforcing or in any manner implementing the statute. Respondents' claim for retroactive benefits was denied.

Both parties appeal. We affirm the district court's grant of summary judgment and injunctive relief to respondents, but reverse its refusal to award retroactive benefits and remand with directions.

This case is one of first impression in this state. Because of its importance, we expedite our decision.

### FACTS

Minn.Stat. § 256D.065 (Supp.1991), effective July 1, 1991, relates to general assistance and work readiness benefits. Under the 1991 amendment to the statute, an applicant without minor children who has resided in Minnesota less than six months receives 60 percent of the amount available to a person who has resided in the state more than six months. Minn.Stat. § 256D.065 (Supp.1991). The minimum grant is $122 per month for a single applicant or $156 for married applicants, figures which represent 60 percent of the $203 and $260 maximum monthly grants received by persons who have resided in the state over six months. *See* Minn.Stat. § 256D.06, subd. 1 (1990). If, however, an applicant actually received benefits in the last state of residence, the applicant may receive benefits equal to the lesser of: (1) the benefits actually received in the last state of residence, or (2) the maximum benefits allowable under Minn.Stat. § 256D.06, subd. 1. Minn.Stat. § 256D.065 (Supp.1991).

Respondents are unmarried adults without children who have resided in Minnesota less than six months, and who applied for general assistance or work readiness benefits after July 1, 1991. None of the named respondents came to Minnesota for the purpose of seeking public assistance benefits. For instance, one is disabled, three are seeking permanent employment, and one came to Minnesota to be closer to his three children and former wife. All received grant amounts ranging from the minimum grant level of $122, to $165, which was the grant level one respondent received in the state of Illinois.

Respondents claim Minn.Stat. § 256D.065 (Supp.1991) (also referred to as "the statute") has caused them to live without adequate income to meet their basic needs, particularly in the area of housing. They presented affidavits from a number of human services providers, who state no housing is available for $122 per month in the cities of St. Cloud, Moorhead, or Minneapolis, or in Anoka County. These affiants all tend to conclude that the reduced benefit amounts will only make a difficult situation much worse.

Appellant claims the statute was enacted in response to a request in 1990 by then Governor Rudy Perpich to reduce the Department of Human Service's (department) budget by $200 million. Department staff researched a variety of options, which in-

cluded eliminating the general assistance, work readiness, and emergency assistance programs entirely. The Department estimates the statute will save the state approximately $890,000 in fiscal year 1992, $1 million in 1993, $1.2 million in 1994, and $1 million in 1995.

Legislative history indicates that the statutory language was not considered by legislative committee, and was offered for the first time in the form of amendments to separate companion bills on the floor of each house of the legislature. Legislative debate on these proposed amendments focused on the concern of legislators that people move to Minnesota in order to collect higher public assistance benefits.

Proponents of the amendments cited anecdotal evidence of individuals moving to Minnesota "just for the welfare benefits" and of the general perception that welfare benefits in Minnesota are higher and easier to collect than in other states. Opponents to the amendments argued that the language was clearly unconstitutional, that other methods, such as weekly grants, tend to better address the problem, and that there is a lack of studies or evidence to support the perception that people come to Minnesota solely to collect higher benefits.

In support of its motion for summary judgment, respondents submitted excerpts from two such studies, one by the Legislative Auditor prepared in 1988, and the other prepared by the Department in 1991. Both studies tend to conclude that while some individuals are drawn to the state by its welfare grant levels, the net effect is negligible.

With respect to the general assistance and work readiness programs, the 1991 study stated:

> Unlike AFDC, General Assistance/Work Readiness is entirely state and locally funded, and is not offered by all states or even all counties within a state. Many of the states west of Minnesota do not have a GA/WR program. Although $203 a month is not much to live on, it is more than is offered in many other states.
>
> A major problem perceived with General Assistance/Work Readiness is transient recipients. These people have no permanent home, and some admit visiting Minnesota mainly to collect GA/WR benefits. The extent of this type of migration has not been established, but in the communities that have larger numbers of transients, it is believed to be a problem.

Minnesota Dep't of Human Servs., *Welfare Migration Study: A Report to the 1991 Legislature*, at 23 (1991). The study concluded:

> The issue of transiency is distinct from migration. The GA/WR program has long been believed to attract transients to Hennepin County who stayed just long enough to pick up a $200 check. This perceived problem was addressed by a change in State law which permitted Hennepin County to issue weekly grants and/or vouchers for food and shelter to GA/WR applicants unable to verify local residence. It appears that this change in Hennepin County's payment policies caused some transients to go to other counties for General Assistance. As of October 1990, the option to issue weekly GA/WR grants and/or vouchers for food and shelter became available to all counties. This option is expected to permit counties to control and limit use of General Assistance/Work Readiness by transients who are not residents of Minnesota.

*Id.* at 25.

### ISSUES

1. Did the district court err in concluding the statute burdens the right to travel and violates the Equal Protection Clause of the United States Constitution?

2. Does the statute violate the equal protection clause of the Minnesota Constitution?

3. Did the district court err in concluding this case does not present a claim under

the Privileges and Immunities Clause of the United States Constitution?

4. Did the district court err in concluding respondents are not entitled to retroactive benefits?

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The parties here agree that there are no genuine issues of material fact, and that the question presented is whether the district court properly applied the law.

■ A challenged statute bears a presumption in favor of constitutionality. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn.1984). This court must "proceed with extreme caution before declaring a statute unconstitutional and do so only when absolutely necessary." *Id.* Finally, "[a] party challenging a statute on constitutional grounds has the onus of demonstrating beyond a reasonable doubt that the statute violates a provision of the constitution." *Id.*

### I

At issue in this case is the constitutionality of a statute that creates two classes of needy residents indistinguishable from each other except that one is composed of residents who have resided in the state over six months, and the other consists of residents who have resided in the state less than six months. On the basis of this sole difference, the statute discriminates between bona fide residents [1] by reducing the amount of general assistance and work readiness benefits available to many of the newer residents. Where a state law unequally distributes benefits among otherwise qualified bona fide residents, it not only raises equal protection concerns, but it may also impermissibly infringe on the constitutionally protected right to travel.

### Right to Travel

■ The right to travel, or the right of free interstate migration, is recognized as a basic, fundamental right under the United States Constitution. *Attorney Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 901–02, 106 S.Ct. 2317, 2320, 90 L.Ed.2d 899 (1986). A state law will implicate the right to travel when it "actually deters such travel, when impeding travel is its primary objective, or when it uses 'any classification which serves to penalize the exercise of that right.'" *Id.* at 903, 106 S.Ct. at 2321 (citations omitted).

Appellant notes the statute has clearly not impeded the named respondents' rights to travel. Appellant further insists the statute was "carefully crafted so that it would *not* burden the right of needy persons to travel." She asserts that by making the receipt of welfare benefits a neu-

---

1. The statute in this case does not pretend to distinguish between bona fide residents of the state and mere transients. Indeed, a distinction has been made between bona fide residence requirements and durational or fixed date residence requirements, which treat established residents differently based on the time they migrated into a state. *See Attorney Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 903 n. 3, 106 S.Ct. 2317, 2321 n. 3, 90 L.Ed.2d 899 (1986). This distinction is explained by the Supreme Court as follows:

A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement * * * [generally] does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents.

*Id.* (quoting *Martinez v. Bynum*, 461 U.S. 321, 328–29, 103 S.Ct. 1838, 1842–43, 75 L.Ed.2d 879 (1983)). In this case, appellant does not dispute that respondents are bona fide residents or otherwise attempt to characterize the statute as a bona fide residence requirement.

tral factor in an individual's decision to move to the state, the statute was designed to remove any incentive the receipt of higher welfare benefits might provide to migrating individuals. As a result, appellant reasons, the statute does not deter migration or otherwise penalize the exercise of the right to travel.

■ While there is no evidence before us that the challenged statute actually deterred anyone from traveling to Minnesota, such evidence is not necessary to find an impermissible burden has been placed on an individual's right to travel. *See Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 257–58, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974). As respondents note, the issue of actual deterrence is largely irrelevant to this case because it would be nearly impossible to find individuals who did not move to Minnesota due to the reduced level of public assistance.

■ In any event, deterrence may almost be assumed in this case. The Supreme Court has recognized that an indigent who desires to migrate to a state that refuses to give new residents any public assistance "will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance." *See Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 89 S.Ct. 1322 (1969). Similarly, an indigent who desires to migrate to Minnesota may hesitate if he or she knows only 60 percent of the amount necessary to live in Minnesota will be available. This assumes, of course, that the $203 grant amount available to established Minnesota residents is the amount "necessary to maintain a subsistence reasonably compatible with decency and health" in Minnesota. Minn.Stat. § 256D.01, subd. 1 (1990) (purpose of general assistance statute).

In addition, the legislative history of the statute establishes that its primary objective was to deter migration of low income individuals into Minnesota. Such a purpose is constitutionally impermissible. *See Sha-*

*piro*, 394 U.S. at 631, 89 S.Ct. at 1329. The statements made by legislators during debate on the statute clearly show their desire to discourage people from moving into Minnesota solely because of the availability of higher public assistance benefits. Such statements are properly considered in determining the legislature's purpose in adopting a statute. *See Handle With Care, Inc. v. Department of Human Servs.*, 406 N.W.2d 518, 522 (Minn.1987).

Finally, the substantial reduction in the amount of benefits effectively penalizes new residents for exercising their rights to travel. As the evidence presented by respondents shows, the level of benefits available under the statute is insufficient to provide for the basic necessities of life. The fact that the statute reduces, rather than eliminates, benefits does not change the conclusion that it is an unconstitutional penalty on the right to travel. *See, e.g., Memorial Hosp.*, 415 U.S. at 260, 94 S.Ct. at 1083 (fact that challenged statute, which prohibited new low-income residents from receiving free in-patient hospital care, still allowed free emergency room care, did not save it from being unconstitutional).

*Equal Protection*

Appellant nevertheless argues that even if the statute penalizes the right to travel, "not every penalty on interstate travel triggers the compelling-state-interest test." *See Davis v. Davis*, 297 Minn. 187, 192, 210 N.W.2d 221, 225 (1973) (one-year residency requirement for plaintiff in divorce action not violative of Equal Protection Clause). The United States Supreme Court has acknowledged that not all waiting periods are constitutionally impermissible. *See Soto–Lopez*, 476 U.S. at 905 n. 5, 106 S.Ct. at 2322 n. 5. For example, the Court has upheld as constitutional one-year residency requirements for maintaining an action for divorce and one-year waiting periods for receiving resident tuition at state universities. *Id.*

■ However, where a residency requirement involves governmental privi-

leges or benefits necessary to basic sustenance, even temporary deprivations or reductions tend to be severe and work serious inequities among otherwise qualified residents. *See id.* at 907, 106 S.Ct. at 2323. The minimum grant levels available under the statute are insufficient to provide for the basic necessities of life in Minnesota, particularly housing. Thus, the deprivations caused by the statute are severe and amount to a penalty on new residents, requiring heightened scrutiny under the Equal Protection Clause.

■ To survive such scrutiny, the statute must be shown to be necessary to achieve some compelling governmental purpose. *Id.* at 904–06, 106 S.Ct. at 2321–22; *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. It must also be shown that the statute uses the least burdensome means of accomplishing its purpose. *Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). The burden on a state is "almost always insurmountable," and a statute will rarely survive the strict scrutiny test. *Eddleman v. Center Township of Marion County,* 723 F.Supp. 85, 90 n. 10 (S.D.Ind.1989).

■ Appellant first asserts the statute was intended to reduce state expenditures in the face of a fiscal crisis. While a state may legitimately attempt to limit its expenditures, it may not accomplish such a purpose by "invidious distinctions" between classes of its residents. *Shapiro,* 394 U.S. at 633, 89 S.Ct. at 1330.

> [A] State may not protect the public fisc by drawing an invidious distinction between classes of its citizens, so [the State] must do more than show that denying free medical care to new residents saves money. The conservation of the taxpayers' purse is simply not a sufficient state interest to sustain a durational residence requirement which, in effect, severely penalizes the exercise of the right to freely migrate and settle in another State.

*Memorial Hosp.,* 415 U.S. at 263, 94 S.Ct. at 1085.

Appellant also asserts the statute was intended to make the receipt of public assistance benefits a neutral factor in a person's decision to move to Minnesota. Again, such a purpose is constitutionally impermissible, whether characterized as the removal of an incentive, as a deterrence, or as an attempt to make receipt of public assistance benefits a neutral factor in an individual's decision to move to the state:

> [A] State may no more try to fence out those indigents who seek higher welfare benefits than it may try to fence out indigents generally. Implicit in any such distinction is the notion that indigents who enter a State with the hope of securing higher welfare benefits are somehow less deserving than indigents who do not take this consideration into account. But we do not perceive why [such an individual] should be regarded as less deserving because she considers, among other factors, the level of a State's public assistance. Surely such [an individual] is no less deserving than [another] who moves into a particular State in order to take advantage of its better educational facilities.

*Shapiro,* 394 U.S. at 631–32, 89 S.Ct. at 1330.

■ Even assuming such a purpose is permissible, the statute in this case is not necessary to achieve such an objective. A statute affecting a fundamental right must be drawn with "precision." *Dunn,* 405 U.S. at 343, 92 S.Ct. at 1003; *Shapiro,* 394 U.S. at 631, 89 S.Ct. at 1329–30. The 1991 study by the Department found that only 6.4 percent of new public assistance recipients move to Minnesota because of the higher level of benefits. Nevertheless, the statute is all-inclusive, and reduces the benefits of all new residents.

Finally, other alternative means are better designed to solve the problems discussed by the legislature when enacting the statute. As noted in the 1991 study by the Department, a distinction must be made between migration and transiency.

From their comments, the legislators seemed most concerned with transients, not with indigents who had migrated to the state to establish residency here. As further noted in the 1991 study, counties may now issue checks or vouchers for food and shelter on a weekly basis to transient indigents unable to verify local residence. Such steps are better tailored to address the concerns raised by the legislators.

In conclusion, by substantially reducing the level of general assistance or work readiness benefits available to new residents, the statute creates invidious classifications between otherwise bona fide residents and impinges upon new residents' rights to travel. Appellant has not met her heavy burden of showing that the statute is necessary to achieve some compelling governmental purpose. The district court therefore did not err in concluding the statute violates the Equal Protection Clause of the United States Constitution, and in granting summary judgment to respondents.

## II

The district court found it unnecessary to decide whether the statute violated the equal protection clause of the Minnesota Constitution, article I, section 2. Respondents urge that we address this issue "to assure that Minnesota's constitutional protections are maintained for the benefit of this state's residents and will not be subject to attack in the United States Supreme Court."

In *State v. Russell*, 477 N.W.2d 886, 888–89 (Minn.1991), the supreme court articulated a rational basis test under the Minnesota Constitution which is different and more stringent than its federal counterpart. That test [2] requires:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* at 888.

The statute at issue here fails to pass scrutiny under this rational basis test. In order to meet the first factor, the state must provide more than anecdotal support for creating a classification that adversely affects one group over another, particularly when such support is contrary to studies prepared by a state agency. *Id.* at 889–90. In this case, the only support for the creation of the classification is anecdotal, and is contrary to at least two studies prepared by state agencies. Without more factual support, the classification created by the statute appears based upon an "arbitrary rather than a genuine and substantial distinction." *Id.* at 890.

The statute also fails because appellant has not shown that the classification created is relevant to its asserted purpose. Again, without more evidence to support the effect the reduced levels of assistance will have on an indigent's decision to migrate to Minnesota, the statute does not further its statutory objective. Moreover, the statute is largely inconsistent with the purpose of the general assistance statute. *See* Minn.Stat. § 256D.01, subd. 1 (1990) (one stated purpose of general assistance is

---

**2.** Appellant urges that this stricter test applies only when analyzing distinctions made on the basis of race. *See State v. Russell*, 477 N.W.2d 886, 889 (Minn.1991) ("It is particularly appropriate that we apply our stricter standard of rational basis review in a case such as this where the challenged classification appears to impose a substantially disproportionate burden on the very class of persons whose history inspired the principles of equal protection.") However, a careful reading of *Russell* makes it clear that this stricter standard applies when analyzing *any* case under the equal protection clause of the Minnesota Constitution.

to provide residents with an amount "necessary to maintain a subsistence reasonably compatible with decency and health"). The only evidence presented suggests that the $122 minimum grant level provided by the statute is insufficient to provide even housing, let alone other basic necessities of life.

Finally, even assuming the statute is aimed at legitimate purposes, it employs an illegitimate means to achieve those purposes. The statute is overbroad, and reduces the level of benefits for all new residents, not just those who migrated to Minnesota for the sole purpose of receiving higher benefits. In so doing, the statute creates an irrebuttable presumption that all new residents come to Minnesota to collect higher benefits. The means chosen to effect the statute's purposes are thus constitutionally suspect. We therefore hold that the statute also violates the Minnesota Constitution, article I, section 2.

### III

■■■ The district court concluded that this case does not present a claim under the Privileges and Immunities Clause of the United States Constitution, Article IV, Section 2. We agree.

The Supreme Court rejected a Privileges–and–Immunities–Clause challenge to a similar statute in *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). *Zobel* involved an Alaska statute which distributed income derived from natural resources to state residents in varying amounts based on the length of their residency. *Id.* at 57, 102 S.Ct. at 2311. In summarily rejecting a claim under the Privileges and Immunities Clause, the Court reasoned:

> The statute does not involve the kind of discrimination which the Privileges and Immunities Clause of Art. IV was designed to prevent. That Clause "was designed to insure to a citizen of State A who ventures to State B the same privileges which the citizens of State B enjoy."

*Id.* at 60 n. 5, 102 S.Ct. at 2312 n. 5 (quoting *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948)).

Because the statute here affects only Minnesota residents, we agree with the district court that a claim has not been presented under the Privileges and Immunities Clause. *See* Minn.Stat. §§ 256D.02, subd. 12a; 256D.05; 256D.051 (1990).

### IV

By notice of review, respondents challenge the district court's refusal to award retroactive benefits. In denying respondents' requested relief, the district court first reasoned a state official acting in her official capacity is not amenable to suit under 42 U.S.C. § 1983. *See Rico v. State*, 472 N.W.2d 100, 104 (Minn.1991) (state's unamenability to suit under § 1983 not dispositive of whether action may be brought under any common law theory). The district court next characterized the case as one in tort for deprivation of constitutional rights. The court concluded that even if such an action was recognized in Minnesota, appellant was immune from money damages under the doctrine of sovereign immunity. *See* Minn.Stat. § 3.736, subd. 3(a) (Supp.1991) (Tort Claims Act); *see also Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn.App.1985) (Minnesota Supreme Court has not yet recognized tort for violation of due process rights). Finally, the district court rejected respondents' argument that their claim for retroactive benefits was not barred by the doctrine of sovereign immunity because that claim was equivalent to equitable relief in the form of specific performance, rather than money damages in tort. It is with this last conclusion that we disagree.

■■■ If, as the district court concluded, the relief sought here is in the form of money damages, it would unquestionably be barred by the doctrine of sovereign immunity. However, we may examine the underlying *nature* of the relief sought to determine whether sovereign immunity ap-

plies. *Cf. Lienhard v. State,* 431 N.W.2d 861, 864 (Minn.1988) (costs and disbursements not part of claim for compensation for personal injury, but reimbursement of expense of litigating claims and therefore not subject to limitation on tort claims provided by § 3.736).

In *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988),[3] the state of Massachusetts sought relief from an action by the Secretary of Health and Human Services refusing to reimburse the state for certain expenditures under the state medical assistance program. *Id.* at 882, 108 S.Ct. at 2726. In determining whether it had jurisdiction to review the action, the Supreme Court had to determine whether the action sought "relief other than money damages" under 5 U.S.C. § 702. *Id.* at 891, 108 S.Ct. at 2731.

The Court first noted that the complaints sought declaratory and injunctive relief, and were not actions for money damages. *Id.* at 893, 108 S.Ct. at 2731. The Court next focused on the monetary aspects of the relief sought, and emphasized that a distinction has long been recognized between money damages and money claimed through specific relief:

> "Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973). Thus, while in many instances an award of money is an award of damages, '[o]ccasionally a money award is also a specie remedy.' *Id.*"

*Bowen,* 487 U.S. at 895, 108 S.Ct. at 2732 (emphasis in original) (quoting *Maryland Dep't. of Human Resources v. Department of Health & Human Servs.,* 763 F.2d 1441, 1446 (D.C.Cir.1985) (Bork, J.)).

The Supreme Court therefore concluded that the action was reviewable because it was not an action for money damages:

> [This case] is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money. The fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief.

*Id.* 487 U.S. at 900–01, 108 S.Ct. at 2735 (emphasis in original) (footnote omitted).

*Bowen* has been applied by at least one state court to reject claims of immunity by a state agency similar to the claims made here by appellant. In *Ohio Hosp. Ass'n v. Ohio Dep't of Human Servs.,* 62 Ohio St.3d 97, 105, 579 N.E.2d 695, 701 (Ohio 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1483, 117 L.Ed.2d 625 (1992), the Ohio Supreme Court held that "[t]he reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity."

Similarly, respondents in this case are seeking money *not* in compensation for injuries resulting from appellant's action. Rather, they ask to be placed in the same position they would have been in, but for appellant's implementation of a statute which proved to be unconstitutional. Once the statute was declared unconstitutional, "it is just as inoperative as had it never been enacted," and the statute prior to its enactment continues in force. *See McGuire v. C & L Restaurant, Inc.,* 346

---

**3.** Appellant urges we should follow an earlier Supreme Court case, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Interestingly, *Edelman* was not even cited by the majority in *Bowen.* We do not believe *Edelman* is instructive here because it is generally limited to cases involving eleventh amendment concerns. *Id.* 415 U.S. at 670–71, 94 S.Ct. at 1359. In such cases, *Edelman* indicates that the court must look at the practical effect of a monetary award, and not at whether it is actually money damages or a form of equitable relief. *Id.* at 667–69, 94 S.Ct. at 1357–58.

N.W.2d 605, 614 (Minn.1984); *Bongard v. Bongard*, 342 N.W.2d 156, 159 (Minn.App. 1983).

Under the prior statute, respondents were entitled to a minimum of $203 per month, which is the same level of benefits available to individuals who have resided in Minnesota over six months. *See* Minn.Stat. § 256D.06, subd. 1 (1990). Thus, respondents essentially seek enforcement of the prior statute, and request that appellant be required to reimburse them the amount she was mandated by law to pay under that prior statute. Such relief is more appropriately characterized as equitable relief in the form of specific performance, not money damages, and is not barred by the doctrine of sovereign immunity. *See Bowen*, 487 U.S. at 900–01, 108 S.Ct. at 2735.

The district court's refusal to award retroactive benefits in this case effectively amounted to a prospective declaration that the statute was unconstitutional, which is contrary to the general rule. *See McGuire*, 346 N.W.2d at 614; *Bongard*, 342 N.W.2d at 159. Allowing reimbursement will tend to further the policy of providing an incentive for challenging unconstitutional laws. *See McGuire*, 346 N.W.2d at 614 (citing *Wegan v. Village of Lexington*, 309 N.W.2d 273, 283 (Minn. 1981) (Amdahl, J., concurring)).

## CONCLUSION

Finally, we reiterate that a state may not constitutionally apportion its services or benefits based solely on the length of a citizen's residency. Acceptance of the appellant's position in this case "would logically permit the State to bar new residents from schools, parks, and libraries or deprive them of police and fire protection." *Shapiro*, 394 U.S. at 632–33, 89 S.Ct. at 1330. Such a result is contrary to the belief that an individual should be free to travel from state to state, and choose the state of his or her residency:

> If a law has "no other purpose * * * than to chill the assertion of constitution-

al rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional." *United States v. Jackson*, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).

*Id.* 394 U.S. at 631, 89 S.Ct. at 1329.

## DECISION

The district court did not err in determining that the statute violates the Equal Protection Clause of the United States Constitution, and in concluding that a claim is not raised under the Privileges and Immunities Clause of the United States Constitution.

While not addressed by the district court, we conclude the statute also violates the equal protection clause of the Minnesota Constitution.

The district court's refusal to award retroactive benefits is reversed. The matter is remanded with directions to fashion appropriate specific relief in the form of reimbursement to class members who received reduced benefits under the statute prior to January 24, 1992, when the district court enjoined appellant from enforcing the statute. Class members entitled to reimbursement include not only those new residents receiving reduced benefits as of January 24, 1992, but also those who, by January 24, 1992, had been Minnesota residents for over six months and who were no longer receiving reduced benefits or whose eligibility for five months of work readiness benefits had expired.

Affirmed in part, reversed in part and remanded.