**HEALTHSTAR HOME HEALTH, INC., et al., Appellants,**

**v.**

**Lucinda JESSON, in her official capacity as Commissioner of Human Services, Respondent.**

**No. A12–0591.**

Court of Appeals of Minnesota.

Dec. 17, 2012.

David B. Olsen, Henson & Efron, P.A., Minneapolis, MN, for appellants.

Lori Swanson, Attorney General, Patricia A. Sonnenberg, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and COLLINS, Judge.*

## OPINION

STONEBURNER, Judge.

Appellants—personal care attendants, agencies who employ personal care attendants, individuals who receive services from personal care attendants, and the mother of an individual who receives personal care attendant services—challenge the district court's grant of summary judgment to respondent commissioner of human services dismissing appellants' claim that the 2011 amendment to Minn.Stat. § 256B.0659, subd. 11(c), reducing the pay of personal care attendants who are related to recipients to 80% of the pay of nonrelative personal care attendants, violates the Equal Protection Clause of the Minnesota Constitution. Because we conclude that the amendment violates our state constitution, we reverse summary judgment granted to respondent and remand to the district court for entry of summary judgment against respondent and determination of appellants' claim for attorney fees.

## FACTS

Under Minnesota's medical-assistance program, some individuals qualify to receive the paid services of a personal care attendant (PCA) to assist in activities of daily living, health-related procedures and tasks, observation and redirection of behaviors, and instrumental activities of daily living. Minn.Stat. § 256B.0659, subd. 2 (2012). Persons who have a legal support obligation for such an individual are disqualified from being PCAs. *Id.,* subd. 11(c) (2012) (disqualifying parents, stepparents, and legal guardians of minors; spouses; paid legal guardians of adults; family foster-care providers (with some exceptions), and staff of a residential setting).

It is the policy of the medical-assistance program that recipients of medical assistance have free choice of a vendor. Minn. Stat. § 256B.01 (2012). And the personal-care-assistance program specifically provides for the use of a fiscal intermediary to assist the recipient of services to exercise free choice of a PCA. *See* Minn.Stat. § 256B.0659, subds. 18–20 (2012).

In 2011, the legislature amended Minn. Stat. § 256B.0659, subd. 11(c), to provide that, "[w]hen the [PCA] is a relative of the recipient, the commissioner shall pay 80 percent of the provider rate." 2011 Minn. Laws 1st Spec. Sess. ch. 9, art. 7, § 10, at 1300 (2011 amendment). For the purpose of this provision, "relative" is defined as a parent or adoptive parent of an adult child, a sibling over age 16, an adult child, a grandparent, or a grandchild of the recipient. *Id.* at 1301. The amendment became effective on October 1, 2011.

On October 13, 2011, appellants sued respondent Minnesota Commissioner of Human Services, challenging the constitutionality of the amendment under the state constitution and asserting that the amendment violates Title VI of the Civil Rights Act of 1964.[1] Appellants Healthstar Home Health, Inc., V–Care Home Health, Inc., Break–Thru Home Health Care, Inc., United Home Health Care, Inc., Hmong

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The governor was also named as a defendant but was later dismissed from the lawsuit.

Home Health Care, Inc., Care Planners, Inc., AbbeyCare, Inc., and Life Fountain Home Health Care, Inc. are all enrolled with the Minnesota Department of Human Services (DHS) as Minnesota PCA and/or PCA Choice Agencies that employ PCAs. Appellants Jean Rogers, Annie Pearl Brown, David Kue, Freddie Tinsley, Mai Ia Her, Kenner Harroway, Deonte Franklin, Terry Srickland, and Johnell Lane are all relative PCAs. Appellants Nancy Larson, Ma Lee, Wang Lao Yang, Pee Tee, Christopher Johnson, Felisa Villacampa, and Sammie Banks are all recipients of relative PCA services. Appellant Susan Arellano is the mother of a recipient of relative PCA services. Respondent answered, denying that the amendment violates the state constitution.

 The district court granted appellants' motion for a temporary restraining order (TRO) enjoining enforcement or implementation of the amendment. The district court then bifurcated the litigation and ordered the parties to first litigate appellants' claim that the amendment creates an arbitrary distinction between classes of relative and nonrelative PCAs in violation of the Equal Protection Clause of the Minnesota Constitution. The parties submitted cross-motions for summary judgment on this issue, and appellants sought attorney fees. The district court granted summary judgment to respondent and directed the entry of judgment pursuant to Minn. R. Civ. P. 54.02. This appeal followed.[2]

## ISSUES

I. Does Minn.Stat. § 256B.0659, subd. 11(c) (Supp.2011), violate the Equal Protection Clause of the Minnesota Constitution?

II. Are appellants entitled to costs or fees under the Minnesota Equal Access to Justice Act, Minn.Stat. § 15.472 (2012), or the Minnesota Uniform Declaratory Judgments Act, Minn.Stat. § 555.10 (2012)?

## ANALYSIS

### I. Equal Protection Clause

 The constitutionality of a statute is a question of law, which is reviewed de novo. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 719 (Minn.2007). We presume the constitutionality of statutes and exercise with extreme caution our power to declare a statute unconstitutional. *Id.* To prevail on an equal-protection claim, the claimant must demonstrate beyond a reasonable doubt that the statute at issue violates the Minnesota Constitution. *Id.*

 The Equal Protection Clause of the Minnesota Constitution guarantees that "[n]o member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 1, § 2. This provision has been analyzed under the same principles used to analyze the guarantee in the Fourteenth Amendment to the United States Constitution that no state will "deny to any person

---

**2.** After the notice of appeal was filed, the legislature again amended Minn.Stat. § 256B.0659, subd. 11(c), to provide that the relative PCA rate reduction will not take effect until July 1, 2013. 2012 Minn. Laws ch. 247, art. 4, § 18, at 930 (2012 amendment). Neither party has argued on appeal that the issue is moot. Because the duration of the challenged amendment was too short to be fully litigated and appellants will be subjected to the same provision under the 2012 amendment, we conclude that the current appeal is not moot. *See In re McCaskill*, 603 N.W.2d 326, 327 (Minn.1999) (providing that an issue is not moot if it "is capable of repetition yet evades review").

within its jurisdiction the equal protection of the laws." *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 725 (Minn.2008) (quoting U.S. Const. amend. XIV, § 1). The analysis begins " 'with the mandate that all similarly situated individuals shall be treated alike, but only invidious discrimination is deemed constitutionally offensive.' " *Id.* (quoting *Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 411 (Minn.2002)).

## A. Threshold "similarly situated" requirement

■ A threshold consideration in determining whether a statute violates equal protection is whether similarly situated individuals are treated differently. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 656–57 (Minn.2012). The parties do not dispute that, as the district court found, relative and nonrelative PCAs are similarly situated, and we agree. As the district court noted:

> Both are required to comply with the same statutes, rules and regulations that specify mandatory training, skills and qualifications. Minn.Stat. Ch. 256B. All services provided must be consistent with a personal assistance care plan developed by a public health nurse, and be limited to the same maximum hours based upon the recipient's home care rating. The work completed and the services provided by relative and nonrelative PCAs are expected and required to be the same in nature.

Having determined that appellants meet the threshold of establishing that the 2011 amendment treats similarly situated individuals differently, we turn to an analysis of appellants' claim that the 2011 amendment treats similarly situated PCAs differently in violation of the guarantee of equal protection of the state constitution.

## B. Level of scrutiny

■ The parties agree that the constitutional challenge in this case does not involve a fundamental right or a suspect class and that the appropriate level of scrutiny is the rational-basis standard rather than strict scrutiny. *See Gluba*, 735 N.W.2d at 719 (stating that when a constitutional challenge does not involve either a suspect class or a fundamental right, the challenge is reviewed using a rational-basis standard). The Minnesota Supreme Court has, over the years, developed two formulations of the rational-basis test: the federal test and the Minnesota rational-basis test. *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn.2000) (noting that one test is the test articulated by federal courts and the other is "often characterized as the Minnesota rational basis test"). The federal test is the standard articulated by federal courts for analyzing challenges brought under the Equal Protection Clause of the United States Constitution. The federal test requires, first, a determination of whether the challenged legislation has a legitimate purpose and, second, a determination of whether it was reasonable for the legislators to believe that the use of the challenged classification would promote that purpose. *Id.* The Minnesota rational-basis test has three requirements:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs;

> (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs pecu-

liar to the class and the prescribed remedy; and

> (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* (quoting *State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991)). The supreme court has characterized the Minnesota rational-basis test as "a more stringent standard of review" than the federal test. *Russell*, 477 N.W.2d at 889 ("Nothing prevents this court from applying a more stringent standard of review as a matter of state law under our state constitutional equivalent to the equal protection clause."). "The key distinction between the federal and Minnesota tests is that under the Minnesota test 'we have been unwilling to *hypothesize* a rational basis to justify a classification, as the more deferential federal standard requires.'" *State v. Garcia*, 683 N.W.2d 294, 299 (Minn.2004) (quoting *Russell*, 477 N.W.2d at 889) (emphasis added).

This court has held that the Minnesota rational-basis test "applies when analyzing *any* case under the equal protection clause of the Minnesota Constitution." *Mitchell v. Steffen*, 487 N.W.2d 896, 904 n. 2 (Minn. App.1992), *aff'd*, 504 N.W.2d 198 (Minn. 1993).[3] But in the context of analyzing a workers' compensation statute, the supreme court in *Gluba* declined to infer from the language or structure of the Minnesota rational-basis test that a higher standard than the federal standard applies to matters concerning the regulation of economic activity and the distribution of economic benefits. 735 N.W.2d at 723. To determine whether a challenged provision in the Minnesota Workers' Compensa-

tion Act violated the Equal Protection Clause of the Minnesota Constitution, the supreme court in *Gluba* concluded that the analysis of the challenged provision under the second step of the Minnesota rational-basis test would focus on whether the legislature could reasonably have believed in any *facts* that would support the connection between the statutory classification and the purpose of the statute. *Id.*

In this case, the parties agree that the Minnesota rational-basis test applies.[4] Based on existing caselaw, we also agree that the Minnesota rational-basis test applies.

## C. Application of Minnesota rational-basis test

### 1. Genuine and substantial distinctions between classifications

In the 2011 amendment, the legislature created a distinction between relative and nonrelative PCAs by providing that relative PCAs will be paid 80% of the amount paid to nonrelative PCAs for providing the same services. The rationale advanced by respondent and found by the district court is, according to the district court, "based on the relatives' moral obligation to help their family members and the *valid assumption* that many relative caregivers will continue to provide care even if their pay is cut ... [whereas] [n]on-relative caregivers do not have the same moral obligation and incentive to continue providing care." (Emphasis added.)

---

**3.** The supreme court affirmed the holding in *Mitchell* that the challenged statute violated the Equal Protection Clause of the United States Constitution without addressing this court's conclusion about the test to be applied to challenges under the state constitution. 504 N.W.2d at 203.

**4.** But respondent urges deference to distinctions between groups in economic matters, citing *Gluba*, 735 N.W.2d at 723.

Under the first step of the Minnesota rational-basis test, we must consider whether the distinctions between relative and nonrelative PCAs are "genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs." *Russell,* 477 N.W.2d at 888 (quotation omitted). Distinctions cannot be based on anecdotal evidence or support. *Id.* at 889–90; *Mitchell,* 487 N.W.2d at 904.

Appellants point out that the district court acknowledged that the rationale behind the distinction between relative PCAs and nonrelative PCAs is based on an assumption that relative PCAs will continue to provide care even if affected by a pay cut. Appellants argue that such an assumption is insufficient to support the distinction. *See Russell,* 477 N.W.2d at 889–90 (concluding that a distinction between those possessing three grams of crack cocaine and those possessing three grams of powder cocaine did not meet the first prong of the Minnesota rational-basis test because the distinction was based on "anecdotal observations of one expert witness" rather than studies or evidence); *Mitchell,* 487 N.W.2d at 899–900, 904 (holding unconstitutional legislation distinguishing, for purposes of calculating benefits, public-assistance recipients on the basis of length of residence because the distinction was not based on studies or evidence but on anecdotal evidence of people who claimed to have moved to Minnesota only for the benefits and the "general perception" that benefits were higher in Minnesota).

Respondent asserts that the difference between relative and nonrelative caregivers is self-evident. Respondent cites to several studies about the number of people receiving all care exclusively from *unpaid* family and friends and to a postamendment newspaper article in which two relative PCAs stated that they would continue to care for their relatives, even at a reduced rate of pay.[5] Respondent also points to the fiscal note prepared by the DHS during the 2011 legislative session, projecting savings that would result from the amendment based on the *estimation* that approximately 31% of PCA services paid for by the state were being provided by relative PCAs potentially subject to the proposed reduced payment, *assuming* that if the legislation were enacted "a number" of program recipients would not receive services from a relative PCA, and "assum[ing] a savings offset of 25 percent to account for this effect."

We do not see the connection between the number of existing unpaid family caregivers and the hypothesis that relative PCAs would be morally compelled to provide PCA services for lower pay than nonrelative PCAs. And we agree with appellants that the rationale for the distinction advanced by respondent is based purely on assumptions rather than facts, including the apparently unchallenged assumption that a moral obligation to provide care for a relative necessarily equates to a moral obligation to *personally* provide such care at a lower rate of pay than a nonrelative PCA would receive for the same work. Additionally, respondent has not provided any evidence about the effect on relative PCAs of a 20% reduction in income. Appellants provided some affidavits to the district court stating that such a reduction would result in relative PCAs themselves seeking public assistance. Moreover, there is no evidence to support the corollary assumption that nonrelative PCAs do not feel a moral obligation to provide services to their clients, regardless of what nonkinship relationship may exist between

5. As appellants point out in their brief, there is no evidence that the studies now cited by respondent were considered by the legislature.

them. The very study that respondent urges this court to consider regarding *unpaid* services shows that 25% of the people who provide care to an individual over the age of 65 do so for someone to whom they are unrelated.

The 2011 amendment is based on an assumed distinction between the response of relative and nonrelative PCAs to the prospect of reduced pay that, in turn, is based on an assumed moral obligation possessed only by relative PCAs. The distinction created by the 2011 amendment between similarly situated individuals is arbitrary and does not provide a natural, reasonable, or substantial basis to justify legislation providing for unequal pay for equal work. We conclude that respondent has failed to meet the first requirement of the Minnesota rational-basis test.

Although we could end our analysis at this point, in the interest of judicial economy, we will briefly address the remaining steps in the Minnesota rational-basis analysis.

## 2. Classification genuine or relevant to purpose of law

The second step of the Minnesota rational-basis test requires that the "classification must be genuine or relevant to the purpose of the law." *Russell*, 477 N.W.2d at 888. Respondent argues that the 2011 amendment is not contrary to the broad purposes of the medical-assistance program of providing services that allow recipients to remain in their homes and meets the broad purpose of the federal Medicaid Act, defined in 42 U.S.C. § 1396-1, which is to enable each state to furnish medical care to needy individuals as far as practical under the conditions of each state. Respondent asserts that, "[u]nder controlling federal law, Minnesota could prohibit close relatives from receiving any Medical Assistance payment for providing PCA services to their family members"

and that "it would be anomalous to find the 80 percent agency payment unconstitutional while the more drastic action of totally denying all payment would be constitutional." But the constitutionality of excluding individuals who are not legally responsible for recipients from qualifying as PCAs is not before this court in this case. The issue here is whether there is a rational basis to deny equal pay for equal work based on a degree of kinship.

Appellants focus their analysis under the second step on the relevance of the classification to the purported purpose of the 2011 amendment—to save state funds without reducing the quality of services provided to qualified recipients of PCA services. But respondent has not shown that any *facts* support the assumption that a significant number of relative PCAs will provide equal services for unequal pay based on an assumed moral obligation to do so, or that, even if they choose to provide services for less pay, they will not themselves be in need of assistance. Appellants argue that the 2011 amendment does not meet the requirement of connecting the unequal pay reduction to the desired outcome. We agree. And we note that the absence of any facts to support the assumptions underlying the alleged connection between the purpose of reducing costs without diminishing services and the method embodied in the 2011 amendment disposes of respondent's assertion that, under *Gluba*, a more deferential standard applies. *Gluba* presupposes that the legislature has some facts to consider at the time a challenged provision is enacted. 735 N.W.2d at 723. In this case, the fiscal note contemplated that some relative PCAs will be unwilling or financially unable to continue to provide services at reduced pay. The amendment therefore is contrary to the legislative policy of "free choice of vendor" by recipients of PCA

services. Minn.Stat. §§ 256B.01, .02, subd. 7 (2012) (defining vendor of medical care to include PCAs). The amendment does not satisfy the second prong of the Minnesota rational-basis test.

### 3. Legitimacy of purpose of challenged statute

The third step of the Minnesota rational-basis test requires that the purpose of the statute must be one that the state can legitimately attempt to achieve. *Russell,* 477 N.W.2d at 888. Respondent argues that reducing expenditures while continuing to support relative PCAs is a legitimate government purpose. Appellants do not dispute this proposition, but they argue that cases applying this step have held that even if a statute is aimed at a legitimate purpose, this prong of the test is not met when the means chosen to effect the purpose are illegitimate. The cases relied on by appellants involve means that were constitutionally suspect or involved invidious discrimination. *See id.* at 891 (concluding that the challenged statute, "while perhaps aimed at" a legitimate purpose, in effect created a conclusive presumption of law that could implicate due process); *Mitchell,* 487 N.W.2d at 903 (citing *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) for the proposition that a state "may not protect the public fisc by drawing an invidious distinction between classes of its citizens" (quotation omitted)). It may be that stereotyping relative PCAs as individuals whose moral obligations compel them to work for unequal pay constitutes invidious discrimination, but we need not decide that issue. The challenged amendment does not meet the first two steps of the Minnesota rational-basis test, and even if its purpose is legitimate, the amendment violates the Equal Protection Clause of the Minnesota Constitution.

### II. Appellants' request for costs and fees

Appellants argue that they are entitled to attorney fees under the Minnesota Equal Access to Justice Act, Minn.Stat. § 15.472 (2012), and "an award" under the Minnesota Uniform Declaratory Judgments Act, Minn.Stat. § 555.10 (2012). Respondent contends that appellants are not entitled to an award of attorney or any other fees under either act. Although the issue of attorney fees has been fully briefed by both parties, the issue is not properly before us on appeal because it was not decided by the district court and the record is not fully developed to permit appellate review. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that generally appellate courts will not consider issues not decided by the district court). Therefore, we remand the issue of attorney fees to the district court for initial consideration.

### DECISION

Because Minn.Stat. § 256B.0659, subd. 11(c), creates arbitrary distinctions between relative and nonrelative personal care attendants, it fails the Minnesota rational-basis test and therefore is unconstitutional under the Equal Protection Clause of the Minnesota Constitution.

**Reversed and remanded.**